(No. 30066.—

THE PEOPLE *ex rel.* Virgil W. Mills, State's Attorney, *et al.,* Appellants, *vs.* FAIRFIELD COMMUNITY HIGH SCHOOL DISTRICT NUMBER 225, Appellee.

*Opinion filed May 22, 1947.*

VIRGIL W. MILLS, State's Attorney, of Fairfield, and CONGER & ELLIOTT, of Carmi, for appellants.

CREIGHTON & KERR, and MARSHALL & FEIGER, both of Fairfield, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a proceeding in *quo warranto,* instituted in the circuit court of Wayne county by the State's Attorney of that county of his own accord and at the instance of five individual relators against the defendant, Fairfield Community High School District No. 225, charging that defendant, without any warrant or authority of law, had assumed and was exercising authority and jurisdiction over certain described territory in Wayne county, the same as if such territory were included within and a part of the defendant district, and that it had usurped and was continuing to usurp such rights and privileges.

Defendant answered, admitting that it was and had been since January 17, 1941, exercising jurisdiction over the territory in question, but denied that such jurisdiction was illegally exercised without warrant or authority of

law. The answer alleged that on January 17, 1941, the territory was legally detached from the non-high school territory of Wayne county and attached to defendant district by a proceeding under section 96a of the School Law; that after such annexation proceeding, Burnt Prairie Community High School District No. 229 of Wayne, White and Hamilton counties was organized, including within its boundaries the disputed territory, so that the territory was included in the boundaries of both the defendant district and the Burnt Prairie district; that on June 18, 1942, a petition was filed in the county court of Wayne county by Roy Woodrow, a voter of the territory, setting forth the boundaries of the two districts and praying that the court determine their boundaries so that said territory would be included in only one district; that such petition was set for hearing on June 29, 1942, and notice thereof published ten days prior thereto; that after hearing all persons resident in such territory who desired to be heard, the court, from a consideration of distance and convenience of travel of school children in going to and from the schoolhouses located in such districts, as shown by the evidence, found the said territory to be included in and a part of the Fairfield district, and by its final order of June 30, 1942, adjudged, decreed and declared the said territory to be included in and a part of said Fairfield district and not included in or a part of said Burnt Prairie district, all as provided by section 91c of the School Law in force in 1941. (Ill. Rev. Stat. 1941, chap. 122, par. 99c.) The answer to the *quo warranto* complaint also alleged that the relators were barred by *laches* and acquiescence from questioning defendant's jurisdiction over the territory in question.

Plaintiffs replied to the answer. They denied the validity of the annexation proceeding and the validity of the county court decree. They denied that *laches* was a proper defense or that there had been any *laches* or improper

delay. They alleged that the annexation proceedings of January 17, 1941, were void and of no effect, for the reason that on January 2, 1941, a petition was filed with the county superintendent of schools of Wayne county for the organization of the Burnt Prairie Community High School District, including the disputed territory, and on January 18, 1941, the said Burnt Prairie district was duly and legally organized, including the territory in question. In support of their attack on the validity of the county court proceedings, plaintiffs alleged that the section of the statute under which the same were had was unconstitutional, or, in the alternative, that its only effect was to determine the boundaries of the districts until such time as it might be determined, in an action of *quo warranto,* to which district the territory belonged.

The court, after a hearing, entered judgment in favor of the defendant and against the individual relators for costs. Plaintiffs have appealed to this court, the validity of a statute being involved.

There is no controversy as to the facts. They are mostly stipulated and are briefly as follows: January 2, 1941, a petition was filed with the county superintendent of schools of Wayne county, pursuant to section 89a of an act to establish and maintain a system of free schools, (Ill. Rev. Stat. 1939, chap. 122, par. 97,) requesting that the superintendent order an election to be held for the purpose of voting for or against the proposition to establish a community high school within certain described territory, including the territory now in dispute, which was then a part of the non-high school territory of Wayne county. Thereupon such an election was called and held by the county superintendent on January 18, 1941. A majority of the votes cast at the election was in favor of the organization of the district, known as Burnt Prairie Community High School District No. 229. In the meantime, on January 17, 1941, a petition for the detachment of the territory

now in dispute from the non-high school territory of Wayne county and its annexation to the Fairfield district was filed with the county superintendent, who, on the same day filed in the office of the county clerk, pursuant to section 96a of the School Law, a map showing said territory as annexed to and included within the boundaries of the Fairfield district.

June 18, 1942, Roy Woodrow, a legal voter in the disputed territory, filed a petition in the county court of Wayne county, alleging that such territory was embraced within the boundaries of the Fairfield district and also within the boundaries of the Burnt Prairie district and praying that the court determine the boundaries of each district, so that the disputed territory should not be included in more than one high school district offering a regular four-year high school course. The county court, after a hearing upon such petition and due notice thereof, in accordance with the statute under which the same was had, entered an order reciting that from a consideration of the distance and convenience of travel of children in going to and returning from the schoolhouses located in such districts, the territory alleged to be in both community high school districts was found to be a part of the Fairfield Community High School District and determining new boundaries of the said Fairfield and Burnt Prairie districts, so that such territory was included within and as a part of the Fairfield district and was not included within and as a part of the Burnt Prairie district.

July 13, 1942, a proceeding in *quo warranto* against the members of the board of education of the Burnt Prairie district was instituted to test the legal existence of that district. Judgment in favor of the defendants, finding the district to be legally organized, was entered in 1943. The relators appealed to this court, contending that the annexation proceedings of January 17, 1941, took precedence of and had the effect of rendering void the election and all

other proceedings in connection with the organization of the Burnt Prairie district, thereby absolutely destroying the legal existence of that district, notwithstanding the fact that such organization proceedings were initiated prior to the annexation proceedings. January 20, 1944, we filed our opinion in that case, affirming the judgment of the lower court. We held that section 89a of the School Law, under which the proceedings for the organization of the Burnt Prairie district were had, and section 96a of the same act, under which the annexation proceedings of the Fairfield district were had, must be construed together in the light of the general purpose and object of the act, and in such a way as to effectuate the intent of the legislature and permit the practical application of the two sections; that, when so construed, section 89a required that a proceeding in full compliance with its provisions shall be carried to the point of holding an election despite a subsequent proceeding initiated under section 96a, and that, similarly, section 96a requires the county superintendent to exercise reasonable discretion in filing a map showing the new and added boundaries of an existing community high school district where an election has been called for the purpose of voting to establish a community high school for territory including the territory shown on the map, and does not permit him by precipitate action in filing the map to arrogate to himself the power to determine that the annexation proceedings shall supersede the organization proceedings and render the same null and void. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) Our opinion concludes: "We hold that a petition filed conformably to the provisions of section 96a which includes territory included in another petition already on file with the county superintendent of schools, pursuant to section 89a, is not a petition which requires disposition by the superintendent prior to the election called on the first petition, and, further, that the annexation proceedings do not prevent the legal incep-

tion of a new community high school district where the vote at the election is favorable to the establishment of a community high school."

From our holding in the *Funkhouser case,* it follows as a necessary consequence that the defendant in this case cannot plead as a defense thereto the annexation proceedings of January 17, 1941. It is true that in the *Funkhouser case* no question was raised as to jurisdiction over the territory involved in the annexation proceedings. The sole issue there was whether or not the Burnt Prairie district existed as a legal entity, and we decided that it was a legally existing community high school district, validly organized as a result of the election of January 18, 1941. The petition requesting such election asked that it be held for the purpose of voting for or against the proposition to establish a community high school district in and for certain territory described in the petition. The notices of election described the same territory. The votes cast at the election were for or against the establishment of a community high school district in and for the territory described in said notices. This territory included, as a part thereof, the territory included in the annexation proceedings. The purpose of the election was to ascertain and give effect to the will of the voters upon the proposition submitted to them. The proposition submitted was the organization of a community high school district, including as a part thereof the territory included in the annexation proceedings. This was the only proposition submitted and voted upon at said election. The annexation proceedings effected no change in this proposition and substituted no other or different proposition in lieu thereof. No proposition was submitted or voted upon concerning the organization of a community high school district not including the territory included in the annexation proceedings. Hence, it is obvious that a community high school district not including said territory was not and could not

be organized as a result of said election. If a proposition to organize certain particular territory into a community high school district is submitted and carried at an election, we do not see how it can be contended that this can have the effect of organizing a part only of the territory into such district. The election of January 18, 1941, was legal and valid and the annexation proceedings of January 17, 1941, did not take precedence thereof. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) It, therefore, necessarily follows that the territory in dispute did not by the annexation proceedings become included within and a part of the Fairfield district and that such proceedings cannot be set up by it in justification of its exercise of jurisdiction over such territory.

The second defense relied on by appellee as its warrant for exercising jurisdiction over the territory in question is the county court order of June 30, 1942. This order adjudicated and decreed that said territory was included in and constituted a part of the Fairfield district. Appellants, in opposition to this defense, contend, (1) that the section of the statute under which the order was entered did not apply to give jurisdiction to the county court; (2) that the section, if applicable, was unconstitutional; and, (3) that if the section was both applicable and constitutional, then the only effect of the county court order was to determine the boundaries of the districts until such time as it might be adjudicated in an action of *quo warranto* to which district the disputed territory belonged.

Appellant's first attack upon the county court order raises the question of jurisdiction of the subject matter. The basis of jurisdiction of the subject matter must be found, if at all, in section 91c which was added to the School Law in 1939, (Ill. Rev. Stat. 1941, chap. 122, par. 99c,) and which provides for the determination of school district boundaries as follows: "Wherever any territory within the State is included in the boundaries of

more than one school district offering a four year high school course, any legal voter of such territory may file a petition in the county court of any county in which the greater part of such territory is situated, setting forth the boundaries of such existing districts and praying that the court determine the boundaries of such school districts, so that said territory shall not be included in more than one school district offering a regular four year high school course." The remainder of the section provides for the subsequent procedure upon the filing of such petition.

The jurisdiction of the county court under section 91c, now section 38 of article 10 of the 1945 School Code, (Ill. Rev. Stat. 1945, chap. 122, par. 10-38,) can be called into exercise only when the same territory is included within the boundaries of more than one "school district offering a four year high school course." Such a school district may be either a high school district or a common school district. Any common school district may establish and maintain a high school, offering a four-year high school course. (*People ex rel. Swingle* v. *Pinari*, 332 Ill. 181; *Russell* v. *High School Board of Education*, 212 Ill. 327; *Rulison* v. *Post*, 79 Ill. 567.) The statute does not provide that its provisions may be invoked when any territory is included in the boundaries of more than one high school district. The same territory, for that matter, cannot be legally included in more than one high school district at the same time. (*Zeigler* v. *Douglas*, 283 Ill. 407; *People ex rel. Harvey* v. *Vaughan*, 282 Ill. 163.) However, the same territory can be legally included in a high school district and at the same time also be legally included in a common school district maintaining a high school offering a four-year high school course. (*People ex rel. Swingle* v. *Pinari*, 332 Ill. 181; *People ex rel. Strother* v. *Sleight*, 306 Ill. 319; *People ex rel. Darnell* v. *Woodward*, 285 Ill. 165.) This does not conflict with the general rule that two distinct municipal corporations of

the same kind and character and created for the same purpose cannot occupy the same territory at the same time. This is so because the fact that a common school district is maintaining a high school does not transform it into a high school district. The two classes of districts are organized and exist for different purposes. The primary purpose in the organization of a common school district is instruction in what is usually known as the common school grades, being grades one to eight, inclusive. If a common school district also maintains a high school with a four-year high school course, being grades nine, ten, eleven and twelve, it does so merely as incidental to and in connection with said elementary or common school grades, the teaching of which is the primary object and purpose of its creation and existence. A high school district, however, is organized and exists solely to offer more advanced courses of study. It is not concerned with the common school grades and has no power whatever to maintain a common school. Therefore, although it is possible for the same territory to be legally included in a high school district and also in a common school district offering a four-year high school course, it is not possible for the same territory to be legally included in two high school districts. When section 91c mentioned territory included in two school districts, it contemplated *legally* included. It is only reasonable to suppose that had the legislature intended also to mean territory *illegally* included within a district it would have so stated.

Section 91c was not intended by the legislature to afford a remedy for settling territorial disputes among high school districts. Nor was it intended to permit one high school district, by seizing and exercising authority over territory not legally within its boundaries, to confer jurisdiction over such territory upon the county court.

The petition upon which the order of the county court was entered stated that the disputed territory was included

within the boundaries of two high school districts, and the court found that it had jurisdiction of the subject matter. The allegation of the petition that the territory is included in two high school districts being legally impossible, it cannot be accepted as the basis of a finding that the court had jurisdiction of the subject matter. Since the record of the county court proceedings shows upon its face that the court did not have jurisdiction of the subject matter its attempted order or judgment is a nullity and can be questioned in the present action, notwithstanding the fact that the county court found it did have jurisdiction.

This conclusion makes it unnecessary to consider the other questions raised in regard to the constitutionality of the act and the effect of the county court order entered thereunder. The constitutionality of a statute will never be determined when the cause in which its determination is sought may be finally disposed of without such determination. *People ex rel. Ray* v. *Lewistown Community High School Dist.* 388 Ill. 78.

Appellee also pleads as a third defense that the relators are barred by *laches* and acquiescence from questioning appellee's jurisdiction over the territory in dispute. This defense cannot avail appellee, as there is no showing that the situation is any different now from what it was in 1941 after the annexation proceedings. There is no evidence that appellee has purchased or built any school house or issued or sold any bonds or that the delay in instituting these proceedings has in any manner or to any extent operated to its disadvantage. Neither is there any showing that a judgment of ouster herein will produce great inconvenience and public detriment.

The judgment is reversed and the cause remanded to the circuit court, with directions to enter a judgment of ouster.

*Reversed and remanded, with directions.*